IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| NATIONWIDE CHILDREN'S HOSPITAL | ) | CASE NO 3:23-cv-44 |
| | ) | |
| Plaintiff, | ) | JUDGE THOMAS M. ROSE |
| | ) | MAGISTRATE JUDGE GENTRY |
| vs. | ) | |
| | ) | |
| THE RAYMATH COMPANY, et al. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT |
| Defendants. | ) | |

Now come Defendants, the Raymath Company and the Raymath Company Health Plan (the "Plan") (collectively, "Raymath") and respectfully move the Court for summary judgment on the claims asserted against them by Plaintiff, Nationwide Children's Hospital ("NCH"). As set forth in the attached Memorandum, there is no genuine issue of material fact as to NCH's standing to bring direct claims against Raymath in this matter. Accordingly, Raymath is entitled to judgment as a matter of law as to NCH's Complaint.

/s/ Michael J. Scarpelli
Cameron C. Downer (0093684)
Michael J. Scarpelli (0093662)
FAULKNER, GARMHAUSEN, KEISTER & SHENK
A Legal Professional Association
Courtview Center – Suite 300
100 South Main Avenue
Sidney, OH 45365
(937) 492-1271 (telephone)
(937) 498-1306 (facsimile)
cdowner@fgks-law.com
mscarpelli@fgks-law.com
*Counsel for the Raymath Defendants*

## **MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

This litigation arises out of the treatment of a child, C.D., whose father, T.D., is a Raymath employee and a participant in the Plan. After providing care to C.D., NCH submitted a payment claim to the Plan's third-party administrator, the J.P. Farley Corporation ("J.P. Farley"). NCH submitted its claim based on an alleged assignment of rights signed by T.D. at the time his child was admitted to the hospital. However, because NCH's assignment was not sufficient to confer any rights held by T.D. pursuant to the Plan, NCH lacks either direct or derivative standing to maintain its claims against Raymath.

**II.     STATEMENT OF UNDISPUTED FACTS**

During the time period at issue in this matter, Raymath provided health benefits to its employees through a self-insured employee welfare plan, the Plan, pursuant to 29 U.S.C. § 1002(A)(1). (Compl., Doc. 1, ¶ 3, PAGEID 2). Raymath signed an Administrative Services Agreement ("ASA") with J.P. Farley related to the Plan, pursuant to which J.P. Farley agreed to serve as the Plan's third-party administrator for the duration of the ASA. (*Id.* at ¶ 14. Ex. B. PAGEID 4, 91-108). The Plan was to be administered in accordance with a Summary Plan Description. (*Id.* at ¶ 12, Ex. A, PAGEID 3, 17-89)

From approximately April 26 to June 10, 2021, and during the effective period of the ASA with J.P. Farley,[1] C.D., the minor child of Raymath employee and Plan participant, T.D., received treatment at NCH. (*Id.* at ¶ 9). During the hospitalization, NCH had T.D. execute a "General

---

[1] The Plan was obligated to cover medical treatment performed up to May 31, 2021; J.P. Farley was obligated to administer claims related to covered treatment that were submitted by the provider within one year of the date of service. ((Compl., Doc. 1, Ex. A-B, PAGEID 17-108). As referenced in NCH's Complaint, the only portion of the C.D. treatment for which NCH has not received payment is the time period of April 26, 2021 to May 31, 2021. (*Id.* at ¶ 16, PAGEID 4).

2

Consent" form to authorize C.D.'s treatment. (*Id*. at ¶ 17, Ex. C, PAGEID 4, 110-112). On section of the General Consent was what NCH characterizes in its Complaint as an "Assignment of Benefits," which read in relevant part:

> **Assignment of Insurance Benefits:**
> I assign to Hospital, my physician, and other healthcare professionals involved in my care, all my rights and claims for reimbursement under any private health insurance policy, Medicare, Medicaid, or any other programs that I identify for which benefits may be available to pay the Hospital for medical services provided to me. I agree to cooperate and provide information as needed to establish my eligibility for such benefits.

(*Id*. at PAGEID 4, 111).

NCH later filed the present action against Raymath, bringing several causes of action under ERISA based upon the "Assignment of Benefits" executed by T.D. (*Id*.).

### III.   LAW & ARGUMENT

Raymath is entitled to judgment as a matter of law on all claims brought by NCH. NCH does not have direct standing to proceed with a claim under ERISA on its own, and it does not have a valid assignment that would empower it to proceed against Raymath under a derivative standing theory. As such, NCH's Complaint must be dismissed.

   **A.  Summary Judgment Standard**

Pursuant to Fed.R.Civ.P. 56(a), summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To meet its initial burden, the moving party must show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its initial burden, the nonmoving party has a reciprocal burden to produce evidence to show there is a dispute of material fact that would prevent summary judgment. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999). A genuine issue of material fact is present if the evidence shows that a reasonable jury could

3

return a verdict in favor of the nonmoving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). If the entirety of the record could not serve to convince a rational trier of fact to issue judgment in favor of the nonmoving party, summary judgment is appropriately granted. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989).

### B. NCH Lacks Direct Standing to Sue Under ERISA.

ERISA contains a civil enforcement provision that allows plan participants and beneficiaries to bring suit to recover their benefits under a plan. 29 U.S.C. § 1132(a)(1)(B); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). A plan participant is defined as "any employee or former employee of an employer, or any member or former member for an employee organization, who is or may become eligible to receive a benefit from any type of employee benefit plan…." 29 U.S.C. § 1002(7). A beneficiary is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The Sixth Circuit has held that a "healthcare provider does not qualify as a statutory beneficiary under ERISA[.]" *Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543, 546 (6th Cir. 2016); *see also Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001); *Rojas v. Cigna Health and Life Ins. Co.*, 793 F.3d 253, 257-58 (2d Cir. 2015 (holding the term, "'Beneficiary,' as it is used in ERISA, does not without more encompass healthcare providers").

In the instant case, NCH admits that the basis for its claims for payment was its status as a healthcare provider to C.D. Accordingly, NCH, without more, does not fit ERISA's definitions of "beneficiary" or "participant," and therefore does not have statutory standing to bring ERISA claims against Raymath in its own right.

### C. **NCH's "Assignment of Benefits" is Insufficient to Confer Derivative Standing.**

ERISA's plain language does not authorize NCH to bring independent claims against Raymath in this matter. However, as alleged in NCH's Complaint, NCH claims derivative standing based on the "Assignment of Benefits" executed by T.D. This theory of standing also does not withstand scrutiny.

"Derivative standing confers upon the holder of a valid assignment standing to sue in place of the assignor." *Brown*, 827 F.3d at 546 (citation omitted). "[A] provider obtains derivative standing to sue under ERISA only when the patient 'actually convey[s]' a 'valid assignment of benefits' under the plan." *Id*. (quoting *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir.1991)).

In interpreting an ERISA assignment in a consent to treat form, courts apply contract law principles. *Harris Methodist Fort Worth v. Sales Support Services Inc. Employee Health Care Plan*, 426 F.3d 330, 334 (5th Cir.2005) (interpreting a consent to treat ERISA assignment under contract principles, and the SPD under ERISA principles). When the terms of a contract are unambiguous, a court is constrained to apply its plain language. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). Only if a contract is ambiguous may a court apply extrinsic evidence, including various canons of construction, to interpret the meaning of the contract's terms. *Journey Acquisition–II, L.P. v. EQT Prod. Co.*, 830 F.3d 444, 455 (6th Cir. 2016) "[W]here the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the non-drafting party." *Savedoff*, 524 F.3d at 763 (*quoting Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 13). Under the canon of *expressio unius est exclusio alterius*, the specific inclusion of certain terms implies the intended exclusion of other matters not mentioned in the contract. *See Broad Street Energy Co.*

*v. Endeavor Ohio, LLC*, 975 F.Supp.2d 878, 890 (S.D. Ohio 2013). Additionally, under the canon of *ejusdem generis*, a general term in a contract "must take its meaning from the specific terms with which it appears." *Retail Ventures, Inc. v. Natl. Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 F.3d 821, 833 (6th Cir. 2012) (citing *Allinder v. Inter-City Prods. Corp.*, 152 F.3d 544, 549 (6th Cir. 1998)).

As referenced previously above, NCH's claim of derivative standing is based upon the following language:

> **Assignment of Insurance Benefits:**
> I assign to Hospital, my physician, and other healthcare professionals involved in my care, all my rights and claims for reimbursement under any private health insurance policy, Medicare, Medicaid, or any other programs that I identify for which benefits may be available to pay the Hospital for medical services provided to me. I agree to cooperate and provide information as needed to establish my eligibility for such benefits.

NCH does not allege that the Plan is a private health insurance policy. (Compl., Doc. 1, ¶ 3, PAGEID 2) ("Defendant, The Raymath Company Health Plan, is a self-insured employee welfare benefit plan within the meaning of 29 U.S.C. §1002(A)(1)."). Nor could it, because pursuant to ERISA's statutory language, no ERISA employee benefit plan "shall be deemed to be an insurance company or other insurer." 29 U.S.C. § 1144(b)(2)(B). It is also undisputed that the Plan is neither Medicare nor Medicaid. Finally, self-insured welfare benefit plans are not expressly mentioned anywhere in NCH's "Assignment of Benefits." Thus, the only way that the assignment can convey any rights to NCH is if the Plan falls into "any other programs" that the recipient of services identified. An application of well-established canons of construction leads to the conclusion that the assignment does not encompass the Plan.

A natural reading of the assignment leads to the understanding that the assignment covers two broad categories of interests: 1) private health insurance policies and 2) Medicare, Medicaid, and any similar government-sponsored programs. Because Medicare and Medicaid are

6

government insurance programs, it logically follows that the reference in the "Assignment of Benefits" to "other programs," immediately after specifying Medicare and Medicaid, refers to other similar government insurance programs. There is no indication in this context that "other programs" would refer to self-funded benefit plans. "[A] general or collective term at the end of a list of specific items is typically controlled and defined by reference to the specific classes ... that precede it." *Fischer v. United States*, 603 U.S. 480, 487 (2024).

Even if the term "other programs" plausibly *could* include the Plan, all ambiguities contained in the document must be resolved against NCH as the drafter of the assignment. *United States v. Seckinger*, 397 U.S. 203, 210 (1970) ("a contract should be construed most strongly against the drafter…."). If NCH had intended to include self-funded plans like the Plan here, it could have included such language in its assignment. NCH is better situated to control the language of its standard forms than the patients and parents, like C.D. and T.D., to whom NCH presents this paperwork during hospitalization, and NCH should therefore bear the risk of any inartful drafting in relation to the "Assignment of Benefits."

The District of South Carolina reached this precise conclusion when presented with an almost identical fact pattern. In *Med. Univ. Hosp. Auth./Med. Ctr. of the Med. Univ. of S.C. v. Oceana Resorts, LLC*, a hospital brought suit against an employer and its self-funded benefits plan to recover the cost of medical care provided to one of the benefits plan's participants. 2012 WL 683938, *1 (D.S.C. Mar. 2, 2012). The benefits plan denied the hospital's claim for payment, which was appealed by the hospital several times but remained denied. *Id.* The hospital filed suit, alleging that it had standing to pursue relief under ERISA pursuant to an assignment of benefits from the employee found in the hospital's consent to treatment form. *Id.* The assignment stated, "I assign and transfer to The Hospital and / or my doctors all rights, and interest in benefits I may

7

have under any insurance policy I may have, including but not limited to hospitalization, medical, third party." *Id.* at *2.

At summary judgment, the employer argued, *inter alia,* that the assignment was ineffective to grant the hospital standing because it expressly did not assign any rights the employee had in any self-funded benefits plan. *Med. Univ. Hosp. Auth.*, 2012 WL 683938, at *2. In finding summary judgment was appropriate for the employer and plan, the court stated:

> Additionally, the Consent Form, which was prepared by [the hospital], does not cover assignments to self-funded employee benefits plans. The Consent Form assigns benefits due under "any insurance policy." The assignment provides examples of types of coverage which would be assigned, all of which are types of insurance. Section 1144(b) (2)(B) of ERISA forbids states from deeming an employee benefits plan "to be an insurance company or other insurer ... or to be engaged in the business of insurance."

*Id.* at *7 (internal citations omitted).

The consent form went on to describe how "such benefits" should be paid or collected from "other parties." *Id.* at *8. The court found that the references to other parties addressed the benefits that were already described, which related exclusively to benefits available under insurance plans. *Id.* Because the assignment only stated that it was an assignment of insurance policy rights, and the benefit plan was clearly not an insurance policy, the assignment was ineffective to convey the hospital any rights to sue.

The analysis from *Med. Univ. Hosp. Auth* is directly applicable to the instant case. As the drafter of the assignment, NCH had ultimate control over its language and scope. NCH expressly included any rights that a patient had in health insurance policies and government insurance programs. While NCH cannot credibly claim to be unaware of the existence of self-funded benefit plans, no express mention of such plans is contained in the assignment. Because NCH's assignment is not sufficient to cover the Plan, NCH lacks derivative standing to bring any of the

claims it has asserted against Raymath in this matter. Accordingly, Raymath is entitled to judgment as a matter of law.

### IV. CONCLUSION

As the various filings in this case reveal, the facts surrounding the handling of NCH's C.D. claim by J.P. Farley are complicated. However, when it comes to NCH's ability to bring direct ERISA claims against Raymath, the legal analysis is straightforward. NCH lacks an adequate assignment of benefits that would provide it with derivative standing to bring its statutory causes of action. For that reason, the Complaint must be dismissed as to all causes of action against the Raymath Defendants.

> */s/ Michael J. Scarpelli*
> Cameron C. Downer (0093684)
> Michael J. Scarpelli (0093662)
> FAULKNER, GARMHAUSEN, KEISTER & SHENK
> A Legal Professional Association
> Courtview Center – Suite 300
> 100 South Main Avenue
> Sidney, OH 45365
> (937) 492-1271 (telephone)
> (937) 498-1306 (facsimile)
> cdowner@fgks-law.com
> mscarpelli@fgks-law.com
> *Counsel for the Raymath Defendants*

### CERTIFICATE OF SERVICE

The undersigned certifies that on this 24th day of July 2025, the foregoing was filed using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

> */s/ Michael J. Scarpelli*
> Michael J. Scarpelli (0093662)