# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (DAYTON)

| | |
|---|---|
| NATIONWIDE CHILDREN'S HOSPITAL, | : Case No. 3:23-cv-00044 |
| Plaintiff, | : District Judge Thomas M. Rose : Magistrate Judge Caroline H. Gentry |
| vs. | : |
| THE RAYMATH COMPANY, et al., | : |
| Defendants. | : |

## DECISION AND ORDER

Currently pending before the Court is the Motion of Non-Parties Michael Kerns ("Kerns") and Benefit Builders, Inc. ("Benefit Builders") to Quash Subpoenas, or Alternatively to Modify Subpoenas and for Protective Order ("Motion to Quash," Doc. No. 63). For the reasons set forth below, the Motion to Quash is **DENIED** in its entirety.

**I.      BACKGROUND**

This dispute arose after Nationwide Children's Hospital ("Nationwide") did not receive payment for $561,379.41 in medical services it provided to a minor child (C.D.) who was allegedly covered by The Raymath Company Health Plan ("Plan"), which covers eligible employees of The Raymath Company ("Raymath") and their dependents. Asserting several claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), Nationwide challenges the non-payment of its claim for benefits, the claim processing procedures used by third-party administrator J.P. Farley Corp. ("J.P. Farley"),

1

and the failure to submit Nationwide's claim for benefits under a policy of stop-loss coverage provided by the Excess Reinsurance Underwriters Agency ("XSRE").[1]

Towards the end of the discovery period, J.P. Farley and Nationwide issued deposition subpoenas to non-party Michael Kerns in his individual capacity.[2] Seeking to quash or modify these subpoenas, Kerns claims that his knowledge about this dispute is limited to his company's sale of the stop-loss insurance policy to Raymath. (Doc. No. 64, PageID 582, 586.) Kerns argues that (1) he should not be required to testify about his personal financial interests because they are irrelevant, (2) the deposition imposes an undue burden because certain deadlines have passed and Raymath's Motion for Summary Judgment states that no genuine issues of material fact remain in the case; (3) the parties are plainly seeking evidence to support claims against Kerns, which is improper; and (4) the only "viable nonparty deponent" is Benefit Builders, because it procured the stop-loss insurance policy and that is the only relevant issue for a deposition. (Doc. No. 63, PageID 552; Doc. No. 64, PageID 580-81.) In his Reply, Kerns also argues, for the first time, that the parties failed to comply with Rule 27, which he contends should govern instead of Rule 45 because the proposed deposition is actually intended to perpetuate his testimony prior to filing suit against him. (Doc. No. 69.) [3]

---

[1] The Excess Reinsurance Underwriters Agency was previously named as both a Defendant and a Third-Party Defendant, but all claims against it have been dismissed without prejudice.

[2] Although J.P. Farley's deposition subpoena was issued to "Mike Kerns, Benefit Builders, Inc." (*see* Doc. No. 63-2, PageID 562), its counsel clarified that J.P. Farley only intended to depose Michael Kerns in his individual capacity, and did not intend to depose Benefit Builders. (Doc. No. 63-3, PageID 566.) Nationwide issued its deposition subpoena solely to Michael Kerns. (Doc. No. 68-11.)

[3] Because Kerns raised this argument for the first time in a reply brief, it has been waived and the Court will not address it. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010).

In response, the parties argue at length that evidence obtained during discovery shows that Kerns was much more involved in this dispute than he has represented to this Court. (*See generally* Doc. Nos. 67 & 68.) Most significantly, the parties contend that Kerns intervened in the processing of Nationwide's claim for benefits to prevent it from being submitted for stop-loss coverage, as he would suffer a personal financial loss if the claim were submitted. The Raymath Defendants and J.P. Farley state that their counsel intend to question Kerns about the following topics during his deposition:

- Kerns' captive cell arrangement with XSRE, which led to concerns about the C.D. claim being paid while stop loss coverage was available to Raymath;

- How much Kerns gained as a result of the C.D. Claim not being processed while stop loss [coverage] was available;

- The amount Kerns stood to lose if the C.D. Claim was processed while stop loss coverage was available;

- [Non-Parties'] duties to protect Raymath from gaps in coverage and to advise it of any potential gaps in coverage;

- What contracts exist, if any, which determine [Non-Parties'] legal and other duties to Raymath (none were produced via the subpoena duces tecum);

- Kerns' instructions to J.P. Farley not to process the C.D. Claim after the itemization was received;

- Kerns' testimony as to his conversations with James Farley about not paying the C.D. Claim while stop loss coverage was available due to his captive cell investment with XSRE;

- Kerns' communications with Suzanne Summers as to C.D.'s Medicaid waiver;

- Kerns' switching the stop loss coverage from an 18/12 to a 12/18 and his characterization that it was an "enhancement" for Raymath;

3

- Kerns' representations to Raymath, or lack thereof, regarding any gaps in coverage caused by the change in coverage;

- Kerns' representations to Raymath that he was unaware of the large C.D. Claim during the period when stop loss coverage was available, despite testimony to the contrary;

- [Kerns'] hiring of Bryan Davenport to double-down on the denial of the C.D. Claim;

- What authority [Kerns] had, if any, to hire Bryan Davenport on behalf of Raymath; and

- Whether Kerns' unilateral actions on behalf of Raymath, including his instructions not to process the C.D. Claim and his hiring of Bryan Davenport without prior consent of Raymath, creates fiduciary liability under ERISA.

(Doc. No. 67, PageID 600-01.)

## II. LAW & ANALYSIS

### A. Legal Standard

Motions to quash non-party subpoenas are governed by Federal Rule of Civil Procedure 45(d)(3)(A)(iv), which requires the Court to quash or modify subpoenas that "subject[] a person to undue burden." As the person contesting the subpoenas, Kerns bears the burden of proving that the deposition will subject him to an undue burden. *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011).

To assess Kerns' claim of undue burden, the Court will consider the factors set forth in Federal Rule of Civil Procedure 26(b)(1). *Hendricks*, 275 F.R.D. at 253 ("[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26"). Rule 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is ***relevant*** to any party's claim or defense ***and proportional*** to the needs of

4

the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (emphasis added). "The [C]ourt's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26(b) Advisory Committee's Note to 2015 Amendment.

### B. Kerns Has Not Shown That Being Required To Testify At A Deposition Will Subject Him To An Undue Burden

The Court finds that Kerns has not met his burden of showing that being deposed will subject him to an undue burden. Based upon the parties' discussions of the evidence obtained during discovery, Kerns appears to have personal knowledge about several issues (listed above) that are of central importance to the parties' claims and defenses. Although Kerns argues that his financial interests are irrelevant, the Court disagrees because the parties contend that a financial conflict of interest motivated him to intervene in the processing of Nationwide's claim. Finally, the parties have no other way to obtain the information that they seek. For all of these reasons, the likely benefit of deposing Kerns strongly outweighs the slight burden of being required to testify at a deposition.

Kerns' primary argument is that the Court should prohibit or limit his deposition because the parties seek to obtain evidence that can be used against him. This startling proposition—which Kerns does not support with any authority—is readily refuted. Rule

5

45 does not allow non-parties to quash or modify subpoenas to avoid being required to implicate themselves or admit to wrongful conduct. To the contrary, non-party deposition subpoenas may be used for precisely that purpose. *See, e.g., Malibu Media, LLC v. Doe*, No. TDC-15-1042, 2016 WL 593502 (D. Md. Feb. 11, 2016) (denying motion to quash filed by non-party potential copyright infringer and stating that "pleading innocence is not grounds to quash a subpoena"); *Glacier Films (USA), Inc. v. Doe-73.180.2.94*, No. 3:15-cv-1729, 2015 WL 7737351 (D. Ore. Dec. 1, 2015) (granting leave to serve a deposition subpoena upon a non-party potential copyright infringer). Moreover, if Kerns believes that he will need to invoke his Fifth Amendment privilege of self-incrimination due to a fear of criminal (not civil) liability, then he must assert that claim of privilege on a question-by-question basis during his deposition. *See SEC v. Pence*, 323 F.R.D. 179, 187 (S.D.N.Y. 2017) (requiring witness who claimed a Fifth Amendment privilege to "attend the deposition … be sworn under oath … and answer those questions he can without risking self-incrimination") (internal quotations and citation omitted).

Next, Kerns relies on the fact that the parties have submitted witness lists to argue that the procedural posture of this case shows they do not need to depose him. But those witness lists **name Kerns as a witness** and describe his expected testimony as follows:

> Mike Kerns is expected to testify regarding his interactions with JP Farley and his conversations with Jim Farley regarding the C.D. Claim. Mike Kerns is also expected to testify as to his hiring of Bryan Davenport and the lack of notice given to Raymath regarding the same.
>
> [Raymath Defendants' Witness List, Doc. No. 59, PageID 541.]
>
> Mike Kerns will testify about his [sic] with Raymath and his role with processing the CD claim.

6

> [J.P. Farley's Witness List, Doc. No. 60, PageID 543.]
>
> Mr. Kerns is expected to testify as to Raymath and JP Farley's processing of the Claim and his retention of Bryan Davenport for representation of Raymath and the Plan.
>
> [Nationwide's Witness List, Doc. No. 61, PageID 547.]

Accordingly, the witness lists show that Kerns' deposition is necessary, not unnecessary.

Kerns also argues that his deposition is unnecessary because "Defendant Raymath filed a Motion for Summary Judgment, stating that there were no disputes of material fact *left in this case*." (Doc. No. 63, PageID 552 (emphasis added).) Putting aside the apparent frivolity of this argument, it fails because Kerns misrepresented Raymath's statement, which was: "[T]here is no genuine issue of material fact *as to NCH's standing to bring direct claims against Raymath in this matter.*" (Doc. No. 58, PageID 531 (emphasis added).) The Court sternly reminds counsel that misrepresentations are not only unethical and sanctionable, but also severely undermine both credibility and the power to persuade.

Finally, Kerns argues that the parties should be required to depose his company Benefit Builders, rather than him, because it was Benefit Builders that procured the stop-loss insurance policy and that is the only relevant issue. But the parties are seeking to depose Kerns, not his company. Therefore, the propriety of deposing Benefit Builders is not an issue before the Court. And Kerns' testimony is relevant, as explained above.

For all of these reasons, the Court finds that the proposed deposition of Michael Kerns is both relevant and proportional, and it will not subject Kerns to an undue burden. Accordingly, the Motion to Quash (Doc. No. 63) is **DENIED**.

7

### III. CONCLUSION

In sum, Kerns has not established that the deposition subpoenas impose an undue burden and therefore should be quashed or modified. Accordingly, the Motion to Quash (Doc. No. 63) is **DENIED** in its entirety, and this Court's prior Order staying the deposition of Michael Kerns (Doc. No. 65) is **VACATED**.

**IT IS SO ORDERED.**

                                                */s/ Caroline H. Gentry*
                                                Caroline H. Gentry
                                                UNITED STATES MAGISTRATE JUDGE

Any party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio Civ. R. 72.4.