UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Nationwide Children's Hospital,**

        *Plaintiff,*

v.                                                      **Case No. 3:23-cv-044**
                                                                        **Judge Thomas M. Rose**

**The Raymath Company,** *et al.***,**

        *Defendants*.

---

**ENTRY AND ORDER DENYING MOTION FOR SUMMARY
JUDGMENT. (DOC. 58.)**

---

Pending before the Court is a Motion for Summary Judgment by the Raymath Company and the Raymath Company Health Plan (the "Plan") (collectively, "Raymath") requesting that the Court enter judgment on the claims asserted against them by Plaintiff, Nationwide Children's Hospital. Because Nationwide Children's had a valid assignment of benefits from a beneficiary of the Plan, Raymath's Motion will be denied.

**I.  Background**

During the time period at issue in this matter, the Raymath Company provided health benefits to its employees through a self-insured employee welfare plan, the Plan, pursuant to 29 U.S.C. § 1002(A)(1). (Doc. 1, ¶ 3, PageID 2.) Raymath signed an Administrative Services

Agreement with J.P. Farley related to the Plan, pursuant to which J.P. Farley agreed to serve as the Plan's third-party administrator for the duration of the Administrative Services Agreement. (*Id*. at ¶ 14., PageID 4, 91-108.) The Plan was to be administered in accordance with a Summary Plan Description. (*Id*. at ¶ 12, PageID 3, 17-89.)

Under the Plan, all claims and claim information were to be sent to Cigna by mail. (Doc. 77-2, PageID 996, 18:20-19:2.) Cigna would then conduct an initial processing and forward the claim to J.P. Farley, who would finish the claim processing. (Doc. 77-2, PageID 990, 15:19-23.)

The Plan was obligated to cover medical treatment performed up to May 31, 2021; J.P. Farley was obligated to administer claims related to covered treatment that were submitted by the provider within one year of the date of service. (Doc. 77-4, PageID 1,023, 57:4-10.) On June 1, 2021, Raymath changed its insurance provider to Aetna, initiating a six-month run-out period with its prior career, Cigna, for claims incurred before June 1, 2021 but not yet paid. (Doc. 77-1, PageID 982, ¶ 3; Doc. 1-5, PageID 125.) The run-out period ended November 30, 2021. (*Id*.) Thus, while medical treatment incurred on May 31, 2021 was covered under the Plan if the claim was submitted before May 31, 2022, the Plan was only insured for claims submitted before November 30, 2021.

Nationwide Children's was an in-network provider under the Plan through an arrangement with Cigna. (Doc. 77-5, PageID 1,038, 110:12-19.) From approximately April 26 to June 10, 2021, C.D., the minor child of Raymath employee and Plan participant T.D., received treatment at Nationwide Children's. (*Id*. at ¶ 9.)

Upon C.D.'s arrival at Nationwide Children's, T.D. executed a General Consent form that included a section entitled "Assignment of Insurance Benefits." (Doc. 77-1, PageID 983, ¶ 7.) The Assignment executed by T.D. provides that:

> I assign to Hospital, physician, and other healthcare professionals involved in my care, all my rights and claims for reimbursement

> under any private health insurance policy, Medicare, Medicaid, or any other programs that I identify for which benefits may be available to pay the Hospital for medical services provided to me. I agree to cooperate and provide information as needed to establish my eligibility for such benefits.

(Doc. 77-1, PageID 986.)

On June 21, 2021, Nationwide Children's submitted a $611,771.45 claim for reimbursement for the services provided to C.D., along with an itemized statement, to Cigna, which Cigna accepted. (Doc. 77-6, PageID 1,135.) As permitted under the Plan, J.P. Farley issued a request for additional information, specifically asking for an itemized statement. (Doc. 77-2, PageID 996, 18:14-19:1.) Nationwide Children's sent a corrected claim with the itemized statement to Cigna. (Doc. 77-5, PageID 1,040, 182:23-184:2.)

After several attempts to provide J.P. Farley with the itemized statement through Cigna, Nationwide Children's faxed a copy directly to J.P. Farley on April 15, 2022, as directed by J.P. Farley. (Doc. 77-5, PageID 1,040, 182:23-184:2.) Upon receipt of the itemized statement, J.P. Farley confirmed that it had all of the necessary information and that the Claim would be processed. (Doc. 77-5, PageID 1,041, 183:21-184:2.)

Nationwide Children's received a letter dated May 17, 2022, from an attorney purporting to represent the Plan and asserting that the Claim was denied. (Doc. 77-6, PageID 1,134, 19:14-16.) The Raymath Plan explained that the claim was denied because it was no longer able to submit claims to its carrier. (Doc. 1-5, PageID 125.)

Nationwide Children's submitted a separate claim to Raymath's then new provider from June 1, 2021 through June 10, 2021, and these claims have been paid. (Doc. 77-1, PageID 982, ¶ 3.) The only portion of the treatment for which Nationwide Children's has not received payment is the period from April 26, 2021 to May 31, 2021. (*Id*. at ¶ 16, PageID 4.)

On February 8, 2025 Nationwide Children's commenced this action. (Doc. 1, PageID 1.) Raymath has filed a Motion for Summary Judgment (Doc. 58) asserting that the Assignment of Benefits failed to confer standing on Nationwide Children's to pursue this action. Nationwide Children's has responded (Doc. 77.) and Raymath replied (Doc. 79), rendering the matter ripe for decision.

## II.     Standard

Summary judgment is required "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A motion for summary judgment must be granted if the nonmoving party who has the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element that is essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment may be denied only if there are genuine issues of material fact that must be resolved by a trier of fact. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact does not exist simply because there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.    Analysis

Raymath asserts the Plan is not included among the categories of benefit programs assigned under the Assignment either (1) because the Assignment lists an exclusive list of benefit programs assigned and that list does not contain the Plan, (2) because the phrase "other programs" must be interpreted to only include items similar to those expressly listed, or (3) because, they assert, a contract should be construed against the drafter. In essence, Raymath asks this Court to interpret

4

the Assignment such that the Plan does not fall within the category of "any other program . . . for which benefits may be available to pay" Nationwide Children's for medical services provided to C.D.

However, courts must apply the plain language of a contract unless the language is ambiguous. *Henry v. Chesapeake Appalachia, L.L.C.*, 739 F.3d 909, 912 (6th Cir. 2014). A contract is ambiguous only when its language is capable of more than one "reasonable, but conflicting interpretation[]." *Chongqing Seaway Mech. & Elec. Equip. Co. v. Healthcare Info., LLC*, 1:13-cv-494, 2015 U.S. Dist. LEXIS 179670, at *7 (quoting *Wells v. Am. Elec. Power Co.*, 48 Ohio App.3d 95, 97 (4th Dist. 1988)). Where the "terms are 'clear and precise,' the contract is not ambiguous." *Haley v. Hunter*, 2006-Ohio-2975, ¶ 14 (9th Dist.) (citing *Pavlich v. Pavlich*, 2005-Ohio-3305, ¶ 7 (9th Dist.)). Use of linguistic canons is unnecessary where a contract is unambiguous. *See Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 830 F.3d 444, 455-56 (6th Cir. 2016) ("[T]he process of interpretation begins by assessing whether [the language] is ambiguous."). Here, the challenged language is susceptible to only one reasonable interpretation and is therefore unambiguous. *See Haley*, 2006-Ohio-2975 at ¶ 14.

The Assignment executed by T.D. provides that:

> I assign to Hospital, physician, and other healthcare professionals involved in my care, all my rights and claims for reimbursement under any private health insurance policy, Medicare, Medicaid, or any other programs that I identify for which benefits may be available to pay the Hospital for medical services provided to me. I agree to cooperate and provide information as needed to establish my eligibility for such benefits.

(Doc. 77-1, PageID 986.) The only reasonable interpretation of this language is that T.D. assigned to Nationwide Children's all "rights and claims for reimbursement under" four categories of benefit programs: (1) any private health insurance policy, (2) Medicare, (3) Medicaid, and (4) any

5

other programs that T.D. identifies for which benefits may be available to pay the Hospital for medical services. (*Id.*, PageID 983, ¶ 7.) The Plan falls within the fourth category of the benefit programs identified by the Assignment.

Raymath does not argue, nor can it, that the Plan is not a program for which benefits are available to pay healthcare providers for services rendered to Plan beneficiaries. Instead, Raymath's Motion for Summary Judgment attempts to rewrite the language in the Assignment to include only two categories of benefit programs instead of the four listed: (1) "private health insurance policies," and (2) "Medicare, Medicaid, and any similar government-sponsored programs." (Doc. 58, PageID 539.)

The Court notes that Medicare and Medicaid fall within the definition of "government-sponsored programs." As such, the proposed interpretation renders their inclusion in the Assignment meaningless, which is contrary to the fundamental notion of reasonableness in contract interpretation. *Wohl v. Swinney*, 2008-Ohio-2334, ¶ 22 ("When interpreting a contract, [courts] will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary"); *see also James River Cas. Co. v. UniControl, Inc.*, 2023 U.S. App. LEXIS 17976, *11 (6th Cir. 2023) ("The fact that [one party]'s interpretation renders a clause meaningless further weakens [that party]'s position that its interpretation is reasonable").

Moreover, use of the word "or" is "almost always disjunctive," and it is used to indicate an "alternative." *Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*, 1:25-cv-47, 2025 WL 1141956, at *3 (W.D. Mich. Apr. 18, 2025) (quoting *Campos Chaves v. Garland*, 602 U.S. 447, 457 (2024)). There are three commas separating the sources of reimbursement into four categories: "private health insurance policies, Medicare, Medicaid, or any other programs

6

identified by the assignor for which benefits may be available to pay the healthcare provider for medical services rendered to the beneficiary." (Doc. 77-1, PageID 986.)

Raymath focuses on three words in the final clause of the assignment: "any other programs." (Doc. 58 at PageID 536.) However, it is a cardinal rule that the meaning of a contract is "to be gathered from a consideration of all its parts." *Henry*, 739 F.3d at 912 (quoting *Karabin v. State Auto Mut. Ins.*, 10 Ohio St.3d 163, 167 (1984)); *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 2011-Ohio-2730, ¶ 37 (2011) ("We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract"). Because the Plan is not a private health insurance policy, nor is it Medicare or Medicaid, it falls into the "any other programs" category of the Assignment. (Doc. 58, PageID 536.)

Raymath attempts to insert the phrase "government sponsored" into the language of "any other programs" category, asserting that that category is confined to "government-sponsored programs" that are "similar" to Medicare or Medicaid. (Doc. 58, PageID 536-37.) The final clause of the Assignment contains no such limitation. It includes no reference to "government-sponsored programs," and instead is an assignment of rights and claims for reimbursement arising under "any other programs that [T.D.] identif[ies] for which benefits may be available to pay the Hospital for medical services." (Doc. 77-1, PageID 986.)

Where the meaning of a text is clear, the judicial inquiry ends. *See Wieland Holdings, Inc. v. Synergy Tax Consultants, LLC*, 3:22-cv-72, 2023 U.S. Dist. LEXIS 54444, at *27 (W.D. Ky. Mar. 29, 2023). Here, the meaning of the text is clear, T.D. assigned C.D.'s "rights and claims for reimbursement under" the Plan, which is a program "for which benefits may be available to pay" Nationwide Children's for the medical services provided to C.D. Thus, all three of Raymath's proposed interpretive cannons fail.

7

There is a "broad consensus that 'when a patient assigns payment' of benefits to a healthcare provider, 'that provider gains standing to sue for that payment under ERISA.'" *Brown v. Bluecross Blueshield of Tenn., Inc.*, 827 F.3d 543, 547 (6th Cir. 2016) (quoting *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015)). ERISA's civil enforcement provision empowers plan participants and beneficiaries to bring suit to recover benefits under a plan. 29 U.S.C. § 1132(a)(1)(B). Although healthcare providers are generally not statutory "beneficiaries" under ERISA and therefore lack direct standing to sue for benefits, "a valid assignment of benefits confers derivative standing." *Dual Diagnosis Treatment Ctr. v. Bluecross Blueshield*, 1:22-cv-073, 2022 U.S. Dist. LEXIS 168666, at *5 (E.D. Tenn. Sept. 19, 2022). If a healthcare provider has received a valid assignment of benefits, then it may assert an ERISA claim just like any other "beneficiary." *Cromwell v. Equicor-Equitable HCA Corp.,* 944 F.2d 1272, 1277 (6th Cir. 1991). Because the assignment of the right to payment "logically entails the right to sue for non-payment," an assignment of the right to benefits necessarily includes the ability to enforce that right by bringing suit under ERISA to collect money owed. *Brown*, 827 F.3d at 547 (quoting *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372). The validity of an assignment of benefits is analyzed using contract principles. *See Productive MD, LLC v. Aetna Health & Aetna Life Ins.*, 969 F. Supp. 2d 901, 917 (M.D. Tenn. 2013) (applying Tennessee contract law); *Abira Med. Labs., LLC v. Bluecross Blueshield of Tenn., Inc.*, 1:24-cv-329, 2025 U.S. Dist. LEXIS 132756, at *7 (E.D. Tenn. May 28, 2025) (same).

Because the language of the Assignment is unambiguous, the Court need not address Nationwide Children's argument that Raymath should be estopped from challenging the Assignment. Nor need the Court address the argument that the Plan itself assigns C.D.'s rights and

claims to reimbursement to Nationwide Children's, regardless of the Assignment, as an in-network provider.

### IV. Conclusion

Because Nationwide Children's Assignment validly assigned C.D.'s rights and claims to reimbursement to Nationwide Children's, Nationwide Children's was conferred standing under ERISA. Therefore, Raymath's Motion for Summary Judgment (Doc. 58) is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, December 10, 2025.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE